The document below is hereby signed.

Signed: March 18, 2013



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| TESFA TSION WUBE and ARLENE | ) | Case No. 12-00577 |
| MICHELLE WUBE, | ) | (Chapter 7) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| AMILCAR CABRAL SYLVESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 12-10046 |
| | ) | |
| TESFA TSION WUBE and ARLENE | ) | Not for publication in |
| MICHELLE WUBE, | ) | West's Bankruptcy Reporter |
| | ) | |
| Defendants. | ) | |

MEMORANDUM DECISION RE MOTION TO DISMISS

Before the court is the *Motion to Dismiss or in the Alternative, Motion for Summary Judgment* filed by Tesfa and Arlene Wube.

I

The following facts are drawn from the complaint and are assumed to be true for purposes of the Motion to Dismiss. Tesfa

Tsion Wube ("Wube") was a party promoter at several nightclubs in Washington, D.C., including the Love Nightclub and The Park at Fourteenth.  In December 2008, the plaintiff, Amilcar Cabral Sylvester, loaned $200,000 to Wube to help fund events and parties during inauguration week.  Sylvester and Wube entered into a loan agreement according to which Wube would repay the loan no later than February 4, 2009.  Wube failed to repay the loan.  Sylvester was awarded a default judgment in the amount of $235,247.00 against Wube in the Superior Court of the District of Columbia.  Wube and his wife, Arlene Michelle Wube, subsequently filed for bankruptcy.  In this adversary proceeding, Sylvester seeks to deny the debtors a discharge, or to except the debt for the loan from discharge.

II

A complaint survives a motion to dismiss if it contains enough factual allegations, accepted as true, "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  The plausibility standard does not require probability, "but it asks for more

2

than a sheer possibility that a defendant has acted unlawfully." *Id.* Moreover, the court is not bound to accept an inference drawn by the plaintiff if the inference is not supported by the facts in the complaint. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). In addition to the facts alleged in the complaint, the court may consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Because the court will grant the defendants' Motion to Dismiss, it will not set forth the legal standards applicable to a Motion for Summary Judgment.

III

In Count I, the plaintiff objects to the debtors' discharge under 11 U.S.C. § 727(a)(4).[1] Section 727(a)(4)(A) of the

---

[1] The complaint appears to confuse an objection to the debtor's discharge with an exception to the debtor's discharge. Under 11 U.S.C. § 727(a), a party may *object to discharge*. A successful objection to a chapter 7 discharge means that none of the debtor's debts are discharged. In contrast, 11 U.S.C. § 523 relates to *exceptions to discharge*. A successful claim under § 523 leads to a particular debt being determined as nondischargeable, but all other debts of a dischargeable character are still discharged upon entry of the debtor's discharge. Count I of the complaint for a "Request for Determination that Debtor's Debt is Non-Dischargeable Pursuant to 11 U.S.C. § 727(a)(4)" and Count II for "Denial of Discharge Pursuant to 11 U.S.C. 523(a)(2)(A)" confuse these distinct causes of action.

3

Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."

To state a claim under § 727(a)(4)(A), the party objecting to the discharge must state facts alleging: "(1) the debtor made a statement under oath, (2) such statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case." *See New World Rest. Grp., Inc. v. Abramov (In re Abramov)*, 329 B.R. 125, 132 (Bankr. E.D.N.Y. 2005) (citation omitted).

Sylvester has not stated a claim under § 727(a)(4)(A). There is no allegation of a false oath or account on the part of either defendant. The plaintiff alleges that the defendants "have knowingly and fraudulently misrepresented to the Plaintiff that they were owners of certain business entities in order to obtain money from the Plaintiff creditor," but the complaint sets forth no facts alleging that the defendants made such statements under oath. Compl. ¶ 30. "Moreover, false statements made in prepetition loan applications are not made in connection with the bankruptcy case, and thus do not form a proper basis for a claim under section 727(a)(4)." *Area Cmty. Credit Union v. Tyrrell (In re Tyrrell)*, 363 B.R. 581, 590

4

(Bankr. D.N.D. 2005); *see also* 6 Collier on Bankruptcy ¶ 727.04[1][c] (16th ed.) ("The false oath that is a sufficient ground for denying a discharge may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." (footnote omitted)).

The plaintiff does not specify under what subsection of 11 U.S.C. § 727(a)(4) he asserts his claim.  To the extent the plaintiff has attempted to assert a claim under the remaining subsections—§ 727(a)(4)(B), (C), or (D)—the complaint does not set forth any factual allegations to support claims for relief under those subsections.

Accordingly, Count I will be dismissed with leave to amend.

IV

In Count II, Sylvester alleges that the defendants "obtained financing from Plaintiff based on false representations and/or actual fraud" and, as a result, that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A).  Compl. ¶ 34.  The defendants argue that the complaint is "devoid of any factual allegations involving actual communications of ownership of the night clubs 'Love' and 'The Park at Fourteenth.'"  Mtn. to Dismiss ¶ 68.

The complaint alleges that in 2008 Wube represented that he was an owner of the nightclubs Love and The Park at Fourteenth

5

and that he was in control of the revenues from those clubs. Compl. ¶¶ 14, 31. The complaint is vague as to whether there was one misrepresentation or many, or how the misrepresentation was communicated. In some parts of the complaint it seems the plaintiff alleges that Wube verbally told the plaintiff he owned the clubs. Compl. ¶¶ 10, 14. In other parts it appears that the plaintiff claims various websites as the source of the misrepresentation. Compl. ¶ 26. Finally, paragraph 14 of the complaint seems to suggest that the statement in the loan document that "Mr. Wube fully understands and wholly complies with Mr. Sylvester hereby reserving the right to request any and all receipts procured from Club Love and/or The Park" is itself the misrepresentation.

Section 523(a)(2)(A) excepts from discharge any debt for money, property, or services obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Courts are split on the meaning of "financial condition," with some courts following a strict interpretation of the term and others following a much broader interpretation. *Compare Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 676 (5th Cir. 2012) ("It means the general overall financial condition of an entity or individual, that is, the overall value of property and income as compared to debt and

6

liabilities."), *Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 712 (10th Cir. 2005) ("Therefore, the better approach is the strict interpretation of § 523(a)(2)(B) that requires a false written statement to describe the debtor's net worth, overall financial health, or ability to generate income."), *and Barnes v. Belice (In re Belice)*, 461 B.R. 564 (B.A.P. 9th Cir. 2011) (strict interpretation), *with Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060, 1061 (4th Cir. 1984) ("A debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition."), *and Beneficial Nat'l Bank v. Priestley (In re Priestley)*, 201 B.R. 875, 882 (Bankr. D. Del. 1996) (broad interpretation).

The parties have not briefed the issue of the meaning of "financial condition." In any event, under either interpretation, all of the alleged misrepresentations relate to Wube's financial condition. The critical inquiry is the purpose of the statement. This is not a case of a debtor misrepresenting to a purchaser the character of the asset being purchased (*e.g.*, a misrepresentation that the asset is unencumbered). Such a statement is not made as a statement of the debtor's ability to pay because once the asset is sold, the debtor can no longer use it to make payments to creditors. Instead, it is a false statement made to make the asset look

attractive to the purchaser.  Here, in contrast, the statement *was* made as an indication of financial ability to pay.

Even under the strict interpretation of "financial condition," which is the interpretation that is most favorable to Sylvester, Wube's representations relate to his financial condition.  Specifically, the complaint alleges that Sylvester loaned Wube money because he thought, based on Wube's representations, that Wube owned the nightclubs, and consequently, that Wube had the financial means to pay him back.  The alleged misrepresentations concern Wube's financial worth and ability to pay.  Because of this, the alleged misrepresentations are excluded from the reach of § 523(a)(2)(A).

To the extent that *In re Bandi* can be read as requiring, for § 523(a)(2)(A) to be inapplicable, that a statement regarding a source of income also include a statement regarding assets and liabilities, I respectfully disagree with that decision.  The statement here was intended to indicate a source of funds to pay the loan.  Precisely because it lacked any indication of other assets and liabilities, no lender could reasonably rely upon it.  That the statement is an incomplete statement of financial condition does not change the fact that it was a statement regarding ability to pay that was thus a

8

statement of financial condition, and it should be subjected to the rigors of § 523(a)(2)(B) if nondischargeability is to apply.

Count II does not state a claim upon which relief can be granted. Accordingly, Count II will be dismissed with leave to amend.

V

Count III alleges that the loan debt should be excepted from discharge based on § 523(a)(2)(B). To state a claim for relief under this provision, the complaint must plead that the debt was obtained by the use of a statement (1) in writing; (2) that is materially false; (3) respecting the debtor's or an insider's financial condition; (4) on which the creditor to whom the debtor is liable for money, property, services or credit reasonably relied; (5) that the debtor caused to be made or published with intent to deceive. 4 COLLIER ON BANKRUPTCY ¶ 523.08[2] (16th ed.).

The complaint lacks any factual allegation setting forth a written, materially false statement respecting the debtor's financial condition. The only written statement the complaint presents is Paragraph 3 from the Loan Agreement which states: "Mr. Wube fully understands and wholly complies with Mr. Sylvester hereby reserving the right to request any and all receipts procured from Club Love and/or The Park." Compl. ¶ 14. There are no factual allegations in the complaint setting forth

9

how this statement relates to the debtor's financial condition. This statement cannot reasonably be interpreted as claiming that Wube owned the nightclubs for two reasons.

First, the statement is preceded by Paragraph 2, which states in part: "Mr. Wube wholly agrees to pay back the original $200,000.00 in principle [sic], plus the greater dollar amount of 20% of $200,000.00 ($40,000.00 USD) or 10% of the net revenues earned by Mr. Wube at LOVE Nightclub & The Park at Fourteenth[.]"  Therefore, the reference to Sylvester's "right to request any and all receipts" appears to mean that Sylvester could request written documentation of the total revenues Mr. Wube earned during the applicable time period; it does not mean Sylvester could request all of the revenues the nightclubs earned during the time period.  Accordingly, the statement does not represent that Wube controlled the revenues from the nightclubs.

Second, the loan agreement states that Wube agreed to pay back the principal plus the greater of $40,000.00 or "10% of the net revenues *earned by Mr. Wube*[.]"  (Emphasis added). Consequently, the loan agreement does not make any representation that Wube was in charge of the revenues earned by the nightclubs.  Rather, the document simply states that Wube would pay back the loan from his own earnings.

10

In addition, the facts do not sufficiently allege that this statement concerning Sylvester's right to request the receipts is materially false. There are no facts that suggest that Sylvester would have been able to request Wube's receipts from the clubs only if Wube was the owner of the clubs.

Finally, the complaint fails to plead facts establishing that Sylvester reasonably relied on this statement in entering into the loan agreement, because a lender would not reasonably rely upon such a vague and ambiguous representation regarding a right to request receipts that might or might not be enforceable or worth anything.

VI

In Count IV, the plaintiff objects to the debtor's discharge pursuant to 11 U.S.C. § 727(a)(2). Under § 727(a)(2), the court shall grant the debtor a discharge unless:

> **(2)** the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>    **(A)** property of the debtor, within one year before the date of the filing of the petition; or
>    **(B)** property of the estate, after the date of the filing of the petition[.]

The complaint fails to state a claim for relief under § 727(a)(2). The only supporting fact is that an audit determined that the debtors had understated their income on

11

their petition.  Compl. ¶ 43.  There are no facts supporting the assertions that the debtors concealed property and that they acted with the intent to hinder, delay, or defraud a creditor or an officer of the estate.

## VII

For all of these reasons, the Motion to Dismiss will be granted and the plaintiff will be granted to leave to amend his complaint.  A separate order follows.


[Signed and dated above.]

Copies to: Recipients of e-notification of orders.