The document below is hereby signed.

Signed: May 15, 2013



_S. Martin Teel, Jr._
_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| TESFA TSION WUBE and ARLENE | ) | Case No. 12-00577 |
| MICHELLE WUBE, | ) | (Chapter 7) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| AMILCAR CABRAL SYLVESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 12-10046 |
| | ) | |
| TESFA TSION WUBE and ARLENE | ) | Not for publication in |
| MICHELLE WUBE, | ) | West's Bankruptcy Reporter. |
| | ) | |
| Defendants. | ) | |

MEMORANDUM DECISION RE _MOTION TO DISMISS AND/OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT_ RE AMENDED COMPLAINT

The court issued a _Memorandum Decision_ (Dkt. No. 16) and _Order_ (Dkt. No. 17) dismissing the complaint for failure to state a claim and giving the plaintiff 21 days' leave to file an amended complaint.  The plaintiff filed an amended complaint (Dkt. No. 20).  Presently before the court is the _Motion to_

*Dismiss Amended Complaint Objecting to Dischargeability of Debt and/or in the Alternative, Motion for Summary Judgment* (Dkt. No. 21) filed by Tesfa and Arlene Wube.

I

For purposes of the *Motion to Dismiss*, the following facts are assumed to be true. Tesfa Tsion Wube ("Wube") was a party promoter at several nightclubs in Washington, D.C., including the Love Nightclub and The Park at Fourteenth. In December 2008, the plaintiff, Amilcar Cabral Sylvester ("Sylvester"), loaned $200,000 to Wube to help fund events and parties during the presidential inauguration week. Amd. Compl. ¶ 13. Wube told Sylvester that he had an ownership interest in the two clubs. Amd. Compl. ¶ 10. He also told Sylvester that he had control over the revenues of those clubs and that he "had the authority to hold events at both venues." Amd. Compl. ¶ 14. Wube told Sylvester that he would use the loan to fund at least 11 events at the two nightclubs. Amd. Compl. ¶ 15. According to the terms of the loan agreement, Wube would repay the loan no later than February 4, 2009. Amd. Compl. ¶ 13.

Wube failed to repay the loan. Amd. Compl. ¶ 16. Sylvester was awarded a default judgment in the amount of $235,247.00 against Wube in the Superior Court of the District of Columbia. Amd. Compl. ¶ 19. Wube and his wife, Arlene Michelle Wube, subsequently filed for bankruptcy. At the

2

section 341 meeting of creditors, Sylvester learned that Wube was not an owner or operator of either nightclub. Amd. Compl. ¶ 25. Sylvester alleges that at the meeting of creditors Wube and his wife stated that they led the public to believe that Wube was an owner of the clubs for marketing purposes. Amd. Compl. ¶ 26. In this adversary proceeding, Sylvester seeks a declaration that the debt for the loan is nondischargeable.

A

A complaint survives a motion to dismiss if it contains enough factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The plausibility standard does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In addressing a motion to dismiss, the court accepts the complaint's factual allegations as true. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). However, the court is not bound to accept an inference drawn by the plaintiff if the

inference is not supported by the facts in the complaint. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). In addition to the facts alleged in the complaint, the court may consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

B

In Count I, the plaintiff seeks to have the debt for the loan declared nondischargeable under 11 U.S.C. § 523(a)(2)(A). The complaint alleges:

> The Debtors have knowingly and fraudulently misrepresented to the Plaintiff that they were owners and operators of certain business entities [Love Nightclub and The Park at Fourteenth] in order to obtain money from the Plaintiff creditor. The Defendant Mr. Wube told plaintiff that he controlled the operations of the aforementioned entities and guaranteed the venues for eleven (11) events. Defendant Wube delivered only five (5) events at only one of the clubs. The failure to deliver both venues is a direct result of defendant Wube's misrepresentation that he controlled the operations of both clubs. Defendant Wube at the time the agreement was negotiated knew he had no authority to bind either club to hold the events contracted for by plaintiff. Plaintiff reasonably relied upon Defendant's misrepresentation.

Compl. ¶ 30. Sylvester maintains that Wube told him "that he ran the operations of the two entities and had the authority to hold events at both clubs." Compl. ¶ 31. Significantly, Sylvester also alleges that Wube "entice[d] Plaintiff to enter

4

into an agreement that Defendant Wube knew he could not fulfill." Compl. ¶ 31.

Section 523(a)(2)(A) excepts from discharge any debt for money, property, or services obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). A debt obtained by a misrepresentation respecting the debtor's or an insider's financial condition must be in writing to be nondischargeable. 11 U.S.C. § 523(a)(2)(B). Accordingly, the first issue is whether the complaint sets forth a statement that is actionable under § 523(a)(2)(A).

This court previously dismissed Sylvester's claim pursuant to § 523(a)(2)(A) because the alleged representation that Wube owned the nightclubs was an oral statement respecting Wube's financial condition. Wube argues that the amended complaint contains the same defect. *Mtn. to Dismiss* at ¶¶ 40–51.

As this court explained in its *Memorandum Decision re Motion to Dismiss*, courts disagree about the meaning of "a statement respecting the debtor's . . . financial condition," with some courts adopting a strict interpretation of the term and some courts adopting a broader interpretation. *See Memorandum Decision*, at 7–9. C*ompare Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 676 (5th Cir. 2012) ("It means the general

5

overall financial condition of an entity or individual, that is, the overall value of property and income as compared to debt and liabilities."), *Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 712 (10th Cir. 2005) ("Therefore, the better approach is the strict interpretation of § 523(a)(2)(B) that requires a false written statement to describe the debtor's net worth, overall financial health, or ability to generate income."), *and Barnes v. Belice (In re Belice)*, 461 B.R. 564 (B.A.P. 9th Cir. 2011) (also adopting a narrow interpretation), *with Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060, 1061 (4th Cir. 1984) ("A debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition."), *and Beneficial Nat'l Bank v. Priestley (In re Priestley)*, 201 B.R. 875, 882 (Bankr. D. Del. 1996) (broad interpretation).

However, the amended complaint alleges more than a statement respecting Wube's financial condition, because it alleges that Wube misrepresented his intent to perform under the contract. Sylvester claims Wube represented that he was an owner and operator of the nightclubs and could host 11 events at both venues even though Wube knew at the time that he did not have the authority to secure events at both venues, and knew that he was entering into an agreement that he knew he could not fulfill. "'[A] promise made with a positive intent not to

6

perform or without a present intent to perform satisfies § 523(a)(2)(A).'" *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 606 (B.A.P. 9th Cir. 1998) (citing *Rubin v. West (In re Rubin)*, 875 F.2d 755, 759 (9th Cir.1989)); *see also Ludwig & Robinson, PLLC v. Yelverton (In re Yelverton)*, 2009 WL 3823187, at *4 (Bankr. D.D.C. Nov. 16, 2009); *Kuper v. Spar (In re Spar)*, 176 B.R. 321 (Bankr. S.D.N.Y. 1994) ("When, at the time a representation is made, the debtor has no intention of performing as promised, a debtor's misrepresentation of his intentions will constitute a false representation under Code § 523(a)(2)(A)."); *First Baptist Church v. Maurer (In re Maurer)*, 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990) ("[T]o be actionable as fraud, the plaintiff must establish that the debtor entered into the contract with the intent of never complying with its terms.").[1]  The facts sufficiently allege that Wube represented that he partly owned and controlled the nightclubs and therefore that he could host events at the clubs, when in fact he had no intention of performing under the

---

[1]  At this time the court will not attempt to harmonize those cases that state that a debtor's representations concerning her ability to pay are relevant to a determination of whether the debtor had a present intention to repay, *see, e.g., In re Barrack*, 217 B.R. at 607, with those cases that state that a debtor's insolvency or inability to pay is not sufficient to show the debtor's lack of intention to repay, *see, e.g., High Cotton Enters. v. Shadinger (In re Shadinger)*, 357 B.R. 158, 166 (Bankr. N.D. Ala. 2006).

7

contract.[2]  Construing the factual allegations liberally in the plaintiff's favor, see *Kowai v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), this court finds that the complaint adequately pleads the first element of a claim under § 523(a)(2)(A), that the debtor made a representation.

The other elements of such a claim are: that at the time the representations were made the debtor knew them to be false; that the debtor made the representations with the intent and purpose of deceiving the creditor; that the creditor justifiably relied on the representations; and that the creditor sustained damages as a proximate result of the representations.  4 COLLIER ON BANKRUPTCY ¶ 523.08[1][e] (16th ed.).  Sylvester alleges that Wube knew at the time the loan agreement was negotiated that he had "no authority to bind either club to hold the events contracted for by plaintiff" and that he knew he could not fulfill the agreement.  Amd. Compl. ¶¶ 30 & 31.  Sylvester contends that Wube made the misrepresentations "in order to entice Plaintiff to enter into an agreement that Defendant Wube knew he could not fulfill." Amd. Compl. ¶ 31.  Sylvester alleges

---

[2]  In contrast, Wube's alleged promise to host 11 events at both nightclubs and his subsequent failure to do so is not an actionable misrepresentation under § 523(a)(2)(A) because "[a] promise to perform in the future is insufficient." *In re Spar*, 176 B.R. 321, 327 (Bankr. S.D.N.Y. 1994); *see also In re Maurer*, 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990) ("It is well established that a finding of fraud cannot be premised upon a mere breach of contract.").

8

that when he entered into the loan agreement he relied on the misrepresentations that Wube owned and operated the clubs and on the promise that Wube would repay the loan when Wube knew he could not fulfill that promise, and thereby implicitly alleges that he relied on a representation that Wube intended to repay the loan.[3]  Amd. Compl. ¶ 27.  Finally, the complaint adequately alleges that Sylvester was not repaid the loan. *Id.* ¶ 16.  Accordingly, Count I states a claim for relief under § 523(a)(2)(A).

C

In Count II, the plaintiff seeks to have the debt for the loan excepted from discharge based on 11 U.S.C. § 523(a)(2)(B).  To state a claim for relief under this provision, the complaint must plead that the debt was obtained by the use of a statement (1) in writing; (2) that is materially false; (3) respecting the debtor's or an insider's financial condition; (4) on which the creditor to whom the debtor is liable for money, property,

---

[3]  Exhibits 3 and 4, attached to the complaint, are printouts of various websites that allegedly show that Wube falsely represented an ownership interest in the nightclubs, as well as in another nightclub, Club Bar 7.  However, the complaint fails to allege that Sylvester relied on these representations, or was even aware of these representations, at the time he entered into the loan agreement.  Indeed, the complaint states that the plaintiff believed Wube obtained an ownership interest in Club Bar 7 "subsequent to the Loan Agreement."  Therefore, the loan could not have been obtained by these alleged false representations, and these Exhibits are not relevant to a claim under either § 523(a)(2)(A) or § 523(a)(2)(B).

services or credit reasonably relied; (5) that the debtor caused to be made or published with intent to deceive.  4 COLLIER ON BANKRUPTCY ¶ 523.08[2] (16th ed.).

The plaintiff points to two statements in the loan agreement as being materially false written statements respecting Wube's financial condition.  The first one is: "Mr. Wube wholly agrees to pay back the original $200,000.00 in principle [sic], plus the greater dollar amount of 20% of $200,000.00 ($40,000.00 USD) or 10% of the net revenues earned by Mr. Wube at LOVE Nightclub & The Park at Fourteenth[.]"  Loan Agreement ¶ 2.  The complaint alleges:

> Specifically defendant Wube states that he would repay the Plaintiff from the "net revenues earned by Mr. Wube at LOVE Nightclub & The Park at Fourteenth." Given that Mr. Wube has told Plaintiff that he was an owner of the aforementioned clubs, Plaintiff reasonably viewed this statement as further indication of not only defendant Wube's financial condition, but as an indication of his operational control. Plaintiff alleges that defendant Wube's description of his compensation is more in line with an equity position rather than a salary or commission for purely promoting parties. Furthermore the promise to hold events a [sic] both venues demonstrated that Defendant Wube had control over each venue. To Plaintiff's detriment it was later learned that the defendant knowingly did not have such control. As a result of these misrepresentations only one venue was used to hold the events and consequently the expected revenue could never be realized.

Amd. Compl. ¶ 37.

However, the complaint does not sufficiently allege that this written statement is materially false.  The statement

10

itself says nothing about whether Wube owned the two nightclubs. As a result, the fact that Wube may not have owned the nightclubs does not render the statement false. The phrase, "earned by Mr. Wube at LOVE Nightclub & The Park at Fourteenth," cannot reasonably be interpreted to mean Wube had an ownership interest in the nightclubs. Such a statement simply reflects that Wube would be paid by the clubs for promoting events; it does not impart any information relating to whether he had an ownership interest in the clubs. Nor can such a statement reasonably be relied upon as a statement indicating an ability to repay the loan; it merely indicates that whatever Wube earned at the nightclubs, Wube would pay 10% of those earnings to Sylvester if that 10% exceeded $40,000.00.

The second statement is: "Mr. Wube fully understands and wholly complies with Mr. Sylvester hereby reserving the right to request any and all receipts procured from Club Love and/or The Park." Amd. Compl. ¶ 14. This court has already discussed why this statement cannot reasonably be interpreted as claiming that Wube owned the nightclubs:

> First, the statement is preceded by Paragraph 2, which states in part: "Mr. Wube wholly agrees to pay back the original $200,000.00 in principle [sic], plus the greater dollar amount of 20% of $200,000.00 ($40,000.00 USD) or 10% of the net revenues earned by Mr. Wube at LOVE Nightclub & The Park at Fourteenth[.]" Therefore, the reference to Sylvester's "right to request any and all receipts" appears to mean that Sylvester could request written

11

> documentation of the total revenues Mr. Wube earned during the applicable time period; it does not mean Sylvester could request all of the revenues the nightclubs earned during the time period. Accordingly, the statement does not represent that Wube controlled the revenues from the nightclubs.
>
> Second, the loan agreement states that Wube agreed to pay back the principal plus the greater of $40,000.00 or "10% of the net revenues *earned by Mr. Wube*[.]" (Emphasis added). Consequently, the loan agreement does not make any representation that Wube was in charge of the revenues earned by the nightclubs. Rather, the document simply states that Wube would pay back the loan from his own earnings.

*Memorandum Decision*, at 10—11. Moreover, the facts do not sufficiently allege that the statement is materially false; in other words, it's not clear why Wube could have requested receipts only if he owned the nightclubs. Additionally, the complaint's facts do not support the claim that Sylvester reasonably relied on this statement in making the loan, "because a lender would not reasonably rely upon such a vague and ambiguous representation regarding a right to request receipts that might or might not be enforceable or worth anything." *Memorandum Decision*, at 11. Consequently, Count II of the amended complaint will be dismissed with prejudice.

## II

The defendant has also moved for summary judgment on the amended complaint. Summary judgment may be granted only if there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

Because many of the material facts in this adversary proceeding are genuinely disputed—for instance, whether Wube orally represented that he owned the nightclubs and whether he intended to deceive the plaintiff about his intentions to perform under the contract when he allegedly represented that he partially owned and controlled the nightclubs—summary judgment is not appropriate.  Moreover, it is rarely "appropriate to grant summary judgment on a claim for non-dischargeability based on 11 U.S.C. § 523(a)(2)(A) because intent to defraud often depends upon the credibility of witnesses." *Lazaron v. Lucas (In re Lucas)*, 386 B.R. 332, 338; *see also Collum v. Redden (In re Redden)*, 234 B.R. 49, 51 (Bankr. D. Del. 1999).

                                III

For all of these reasons, the Motion to Dismiss will be granted in part and denied in part.  Count II will be dismissed with prejudice.  The Motion for Summary Judgment will be denied. A separate order follows.

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.

R:\Common\TeelSM\RMC\Decisions\Wube\Wube MTD Amd Compl v3.docx